LAND, J.
Plaintiff claims damages from the defendant company for the breaking of his leg by the careless unloading of lumber from a wagon. He relates the occurrence as follows:
“On the 4th day of February, 1901, about 7 in the evening, on St. Charles avenue, near Seventh street, I was standing by the pile driver on St. Charles street, and I heard a great racket across the street, and loud talking and cursing1. I went over there, and as I emerged from under the tree I saw this driver there. He met me between four and five feet behind the wagon, a little on the side, and he said: ‘I am damn tired of working at night, and I want to sign my ticket.’ * * * I told him: ‘Hold on; I don’t know whether this lumber is for me or not; but, if it is, you are not in the right place.' He said: ‘Here’s my ticket.’ I turned half around and raised my lamp to read the ticket, and made out that they were from the New Orleans Cypress Company. I tried to make out how many pieces the ticket called for, but before I did that the lumber was rolled off the wagon, scattered, and caught me on the right leg, knocked me down, and broke it. * * * I hollered to the driver five or six times. If he heard me, he paid no attention. I then called to the motorman going by in the car. * * * The first man passed me by, and the second stopped opposite me and jumped over the front of his car and got a hold of the lumber. Then the nigger came walking in and got a hold of the other end. They raised the lumber off my leg, and assisted me to stand up on one leg, and then I discovered that this nigger had been drinking, and that he was blind of one eye. * * * The electric light shone between the trees, and he was very close to me, and I could see him.”
The only other witness was the driver. His statement, omitting questions as far as possible, is as follows:
“I hauled a load of lumber out there about 7 o’clock. The foreman was not there, and Mr. McDonnell had me to put it where he wanted it. He was the watchman, and had a lantern in his hand. It was on the right-hand side of St. Charles avenue, going up. I had 3 tiers of lumber 18 tiers high and 16 feet long. The lumber is unloaded by dumping it with a crank. You pull the crank back this way [indicating], and it has a little cogwheel right here, and it dumps like this. I did not start the team up. I hallooed to Mr. McDonnell to get out of the way, and he didn’t get out of the way, and I peeped under the wagon and seen him still standing there, and I hallooed to him again to get out of the way. And when the lumber was dumped, the wagon Tun up of course, and the outside tier fell over and caught his leg. Mr. McDonnell was on the left-hand side of the wagon, and I was on the right-hand side — on the side on which the little crank is. I went to pull the tail of the lumber down. Q. You use this crank to shove the load back, do you? A. Yes, sir; and when I get the load on a balance I can go back and put my hand on the lumber, and pull it down like that [indicating]. Q. And then it runs right off? A. Yes, sir. Q. How long were you talking with Mr. McDonnell before you commenced to dump the lumber? A. I asked Mr. McDonnell where was the foreman, and he said the foreman wasn’t there, and he didn’t know where the foreman was. He said: ‘I want that here.’ He said: -‘Is it cypress a: pine?’ I said it was cypress; and he said, ‘Put it here,’ and I put it where he said to put it. Q. When did you tell him to get out of the way of the wagon? A. Before the lumber dumped. Q. Before you did anything? A. I told him to get out of the way, because that lumber is liable to fall over and hurt him, and when I peeped under the wagon again he was still standing there, and I told him again to get out of the way. Q. And about that time, I suppose, the lumber rolled off? A. The lumber rolled off; yes, sir. Q. What did Mr. McDonnell say to you when you told" him to get out of the way? A. He didn’t answer at *48 all; that’s how come me to look at him the second time. Q. What answer did he make the second time? A. He didn’t answer, and then the lumber was coming off the wagon. Q. Did you shout loud enough for him to hear? A. I hallooed to him. I said: ‘Get out of the way, captain; if -that lumber falls, it will hurt you.’ Q. You couldn’t see very well, except where he stood? A. I seen he was standing close to the wagon at the time when I hallooed at him, and I pulled the tail of the lumber, and I thought he had got out of the way. He was standing in the street; not on the curbstone. The outside tier fell, and caught him against the curbstone. When I got there with the lumber, I got down to look for the foreman, and he wasn’t there, and I found' Mr. McDonnell. Q. Did you use bad language towards Mr. McDonnell on that occasion? A. No, sir;' I did not. I asked a gentleman— He is oyer there. I think I said: ‘Captain, I had better stay here and see how the thing turns out.’ And he said: ‘Old man, it is not your fault. He had no business there. He ought to attend to-his own business, and not mine.’ ”
The witness also testifies that McDonnell tried, to bribe him.
On cross-examination he testifies that he had not been drinking, and he adds:
“If it hadn’t been that Mr. Appleby made me take the load out, I would never had gone out at that time with it, because it was too late; but he said I had to go, and I went.”
McDonnell, on rebuttal denied that he had tried to bribe the witness.
In addition to this, there is the testimony of a man named Hawkins, who says that he asked the plaintiff how the thing occurred, and that the plaintiff said he was trying to assist the driver to unload, and while unloading the lumber fell over. And there is the testimony of the foreman, who says that a week before the accident he noticed that McDonnell was standing too near a wagon that was being unloaded, and he warned him, and told him to remember he was an old man, and that McDonnell answered, “I am not so old.”
Plaintiff, in rebuttal, contradicted Robertson, the foreman, and Hawkins, denying their testimony in toto. Plaintiff also denied that the driver called to him to get out of the way, and testified that he did not go within five feet of the wagon.
The contractor, Cullom, testified as to the character of the driver as follows:
“One of the driver’s eyes was affected, and he was a very disagreeable man. I threatened two or three times to take a club to him. He was overbearing. He wanted to drop his material where he saw fit, and not where I saw proper.”
Mr. Cullom further testified as follows;
“I do not know that this driver is any worse than the rest of them. They are all reckless at times, and want to have their own way, I have no doubt that Robertson did warn the man to be careful. It was his duty, if he thought there was any danger, particularly with these drivers.”
The burden of proof was on plaintiff to make out his case by a preponderance of the evidence. He was contradicted, not only by the driver as to the facts and circumstances attending the accident, but is impeached to some extent by the statements testified to by Hawkins and Robertson.
The ease comes before us with a judgment in favor of the defendant, showing that the trial judge did not give credence to the testimony of plaintiff.
It is the settled jurisprudence of this state that the verdict of a jury or the opinion of the judge a quo upon the credibility of witnesses will not be disturbed, unless manifestly erroneous or clearly wrong. 1 Hennen’s Digest, “Appeal,” 1, X (b) 1, p. 72.
The wagon was unloaded by the operation of a crank and rollers in the usual manner. The driver was guilty of no negligence in this respect. One or more of the pieces rolled sideways and fell on plaintiff. He testified that he was never within five feet of the wagon. Be that as it may, he was too close for safety, and either negligently exposed himself or the lumber rolled an unusual distance. When we add the direct testimony of the driver that he called twice to plaintiff to get out of the way, and the testimony of the foreman that he had warned plaintiff of the danger of getting too near the wagons while unloading, the inference is that plaintiff unnecessarily exposed himself to a peril, *49 which he knew or should have known. At least, the evidence fails to show with reasonable certainty that the defendant’s driver was guilty of negligence.
Judgment affirmed.